UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ANIKET DHADPHALE, FBO, CHRISTOPHER WESTFALL IRA**  Plaintiffs,  v.  **JOSEPH DELANEY, BRETT J. RUNKEL, D. SCOTT ESHELMAN**,  Defendants. | 2:18-cv-13780  HON. TERRENCE G. BERG  **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Plaintiffs Aniket Dhadphale and FBO Christopher Westfall IRA are suing Defendants Joseph Delaney, Brett J. Runkel, and Scott Eshelman for their investment funds, which were allegedly provided in order to establish a pharmaceutical returns business, Encompass Pharmaceutical Services, LLC, but were not actually used for that purpose, were spent by Defendants, and never returned. Defendant Joseph Delaney has moved to dismiss Plaintiffs' fraud claim against him (ECF No. 14). Delaney asserts, first, that Plaintiffs' fraud claim was not pled with the particularly required by Rule 9(b) of the Federal Rules of Civil Procedure and, second, that the fraud claim should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The Court

finds that Plaintiffs have sufficiently pled their claim for fraud against Delaney and accordingly will deny the motion to dismiss.

## BACKGROUND

Plaintiffs' Complaint avers that, on March 10, 2014, Joseph Delaney began targeting Aniket Dhadphale as part of a fraud scheme involving the formation, management, and operation of a pharmaceutical returns business, Encompass Pharmaceutical Services, LLC ("Encompass" or "the LLC"). ECF No. 11 PageID.505. Dhaphale was at that time operating a general pharmaceuticals and medical supplies distribution company; Delaney worked in sales at a pharmaceutical returns company named Rx Reverse. *Id.* According to Dhadpale, Delaney reached out to him by phone about opening a business that would specialize in managing pharmaceutical returns. *Id.* A few days later, on March 13, 2014, Delaney sent Dhadphale and Christopher Westfall, an acquaintance of Dhadphale's, business projections for the proposed business. ECF No. 11 PageID.506. To market this business idea to Plaintiffs, Delaney allegedly "highlighted his knowledge of the pharmaceutical returns industry" as well as his willingness to manage the business. *Id.*

Over the next six weeks, Defendant Delaney and Plaintiffs Dhadphale and Westfall participated in a series of phone calls about purchasing an existing pharmaceutical returns business. *Id.* Next, during the winter of 2014, the three men met in person to discuss opening

2

the proposed business. *Id.* Plaintiffs aver that at this meeting Delaney told them Brett J. Runkel—who Delaney described as a wealthy individual from Seattle, Washington—was interested in investing $500,000 in the planned business. ECF No. 11 PageID. 506–07. Through late 2014 and early 2015, Defendants Delaney and Runkel, and Plaintiffs Dhadphale and Westfall, continued to discuss forming a pharmaceutical returns business. ECF No. 11 PageID.507. According to the Complaint, "[b]ased on Delaney's representations about his experience [and eagerness to manage the business] and Runkel's representation about his willingness and ability to contribute [ ] $500,000 to the business venture, Dhadphale and Westfall agreed to go forward with forming an LLC." *Id.*

On January 15, 2015, Plaintiffs claim Delaney shared a draft operating agreement for Encompass with them. ECF No. 11 PageID.508. Under the proposed agreement, Delaney would serve as Encompass's chief executive officer and the LLC's members would include Delaney—as the managing member—and Runkel, Dhadphale, and FBO Christopher Westfall IRA as non-managing members. *Id.* Delaney would not be required to make any capital contribution yet would own 60% of the LLC's unit shares. *Id.* In his capacity as chief executive officer of Encompass, Delaney would also be paid a salary of $300,000 for the first 120 days of operation and as much as $450,000 for any subsequent period. ECF No. 11 PageID.509. Additionally, the operating agreement provided that Delaney would receive fully paid health insurance, two

3

company cars, housing expenses for a home in Los Angeles, California, and reimbursement for business-related travel, lodging, and entertainment. ECF No. 11 PageID.509–10. As non-managing members of Encompass, Dhadphale and FBO Christopher Westfall IRA were each to make capital contributions of $250,000 to the LLC. ECF No. 11 PageID.508. Dhadphale claims that, on Delaney's instructions, he wired his promised $250,000 to the Law Offices of Doug Elston, Delaney's attorney, on February 2, 2015. ECF No. 11 PageID.509. Dhadphale further asserts that Delaney told him Attorney Elston "would hold the funds in escrow until the operating agreement was executed, the LLC was formed, and the LLC bank account was opened." *Id.*

The Complaint next avers that, on March 3, 2015, Runkel introduced Dhadphale and Westfall to D. Scott Eshelman, who Runkel described as "a close contact who would provide financial oversight for the LLC." ECF No. 11 PageID.510. That same day, Eshelman apparently submitted Encompass's required business filings to the Secretary of State for the State of Washington, identifying himself as the contact person, registered agent, and executor of the LLC. ECF No. 11 PageID.510. Eshelman also opened a bank account for Encompass at a United States bank. *Id.* Finally, on March 16, 2015, six weeks after Dhadphale had wired his $250,000 contribution to Elston, Encompass's operating agreement was finalized and executed by all parties. *Id.* Westfall wired

4

his contribution of $250,000 to the LLC's newly opened bank account shortly thereafter, on March 23, 2015. *Id.*

Throughout April 2015, Delaney communicated with Dhadphale and Westfall about Encompass's business operations, according to Plaintiffs, "intentionally leading both [of them] to believe that Delaney was fulfilling his duties as chief executive officer and managing member of the LLC and [that] the business was operational." ECF No. 11 PageID.511. Unbeknownst to Dhadphale and Westfall, however, Eshelman resigned as Encompass's registered agent in June 2015. *Id.* Because Encompass did not register any new agent within the mandated 65-day period, the Secretary of State dissolved the LLC. *Id.* Plaintiffs contend none of the Defendants notified them of Eshelman's resignation or Encompass's dissolution. *See id.*

In late 2015, Defendants became increasingly unresponsive to Plaintiffs' requests for updates about Encompass's business operations. *See* ECF No. 11 PageID.512. Plaintiffs assert that, by the end of 2016, Delaney had entirely stopped responding to their efforts at communication. *Id.* A that point, Plaintiffs "concluded the best business strategy at that point would be to liquidate the LLC." *Id.* Dhaphale demanded that Delaney and Runkel return his capital contribution. *Id.* According to the Complaint, Runkel repeatedly assured Dhadphale during the summer of 2017 that the contribution would be returned but then dragged his feet and refused to provide any specific deadline by

5

which the money would be wired. *Id*. Runkel later told Dhadphale that "the money could not be returned because Delaney had drained the LLC account." ECF No. 11 PageID.514. Plaintiffs aver Dhadphale's capital contribution had not been returned as of the date they filed their Second Amended Complaint. ECF No. 11 PageID.513.

Plaintiffs further allege that Runkel never contributed any capital to the LLC, that Elston, at Runkel's direction, deposited only $50,000 of Dhadphale's $250,000 capital contribution into Encompass's bank account, and that the remainder of Dhadphale's money was sent to accounts controlled by Delaney and Runkel directly, as well as to Elston, and to an account controlled by an entity named Busch Development. ECF No. 11 PageID.514. Additionally, Plaintiffs assert that Delaney continued to draw a salary and reimburse himself for claimed expenses from Dhadphale and Westfall's capital contributions, and that Eshelman made withdrawals from Encompass's bank account. ECF No. 11 PageID.514–16.

## DISCUSSION

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Courts have interpreted this language to mean that a claim for fraud typically meets Rule 9(b)'s requirements if it alleges: "(1)

the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1003 (E.D. Mich. 2017) (internal quotations omitted) (quoting *Wall v. Mich. Rental.* 952 F.3d 492, 496 (6th Cir. 2017)). At a minimum, to meet Rule 9(b)'s particularity pleading requirements the Sixth Circuit requires that a plaintiff "must allege the time, place and contents of the misrepresentations upon which they relied." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). Another court in this district, for example, dismissed a claim for fraud where the plaintiff identified the time and place of the alleged misrepresentations, but not their "specific content." *S.E.C. v. Conaway*, No. 2:05-CV-40263, 2009 WL 1606655, *2 (E.D. Mich. June 8, 2009).

Even where a plaintiff alleges fraud in violation of state law only, Rule 9(b)'s particularity requirement applies if the claims are asserted in federal court. *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13-13804, 2015 WL 3541905, at *3 (E.D. Mich. Apr. 30, 2015). Here, Plaintiffs assert their claim for fraud under Michigan law, the elements of which are: (1) the defendant made a material misrepresentation; (2) that was false; (3) defendant made the misrepresentation knowing it was false, or made it recklessly, without any knowledge of its truth, and as a positive statement; (4) she made it with the intention that it should be acted upon

7

by plaintiff; (5) plaintiff indeed relied upon it; and (6) plaintiff thereby suffered injury. *Harbor Thirteen Mile-20600 LLC v. Emp. Ret. Plan of Consol. Elec. Distrib., Inc.*, No. 15-14066, 2016 WL 1665158, *2 (E.D. Mich. Apr. 27, 2016) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976)).

Plaintiffs' Second Amended Complaint provides detailed allegations of Delaney's fraud. ECF No. 11. They establish a clear timeline of when the alleged fraud took place, beginning with Delaney's March 10, 2014 phone call to Dhaphale. ECF No. 11 PageID.505. The pleading also contains the dates of various conversations between Plaintiffs and the Defendants—both citing to specific dates and to approximate ones, such as "the winter of 2014"—during which the alleged misrepresentations took place. *See generally* ECF No. 11. Likewise, Plaintiffs explain how the claimed misrepresentations took place over phone and email, as well as during a meeting in Ann Arbor, Michigan. *Id.* They further describe the specific contents of several of these alleged misrepresentations by Delaney, including, among others:

- Delaney's representation that "he was interested in opening a business that would specialize in handling pharmaceutical returns." ECF No. 11 PageID.505.
- Delaney's assertion that he was committed to managing the LLC. ECF No. 11 PageID.506.
- Delaney's representation that Runkel was interested in investing in Encompass. ECF No. 11 PageID507.
- Representations in late 2014 and early 2015 by Delaney and

8

- Runkel that Runkel was willing and able to provide a capital contribution to the business of at least $500,000. ECF No. 11 PageID.507.

- Misrepresentations, made orally and in writing in the operating agreement, that Runkel would make a capital contribution of $500,000. ECF No. 11 PageID.508.

- Delaney's claim that Elston would hold Dhadphale's $250,000 capital contribution in escrow until the operating agreement was executed, the LLC formed, and the LLC bank account opened. ECF No. 11 PageID.509.

- Defendants' assertions that Plaintiffs' capital contributions would be used only for the LLC's business operations. *See* ECF No. 11 PageID.516.

- Delaney's emails representing that he was fulfilling his duties as chief executive officer and that the business was operational. ECF No. 11 PageID.510–11.

As pointed out by Delaney in his motion to dismiss, some of these alleged misrepresentations indeed involve a promise of future action. He correctly asserts that "an action for fraud must be predicated upon a false statement relating to a past or existing fact; promises regarding the future are contractual and do not support a claim for fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (citing *Hi-Way Motor Co.*, 247 N.W.2d at 815); *Bye v. Nationwide Mut. Ins. Co.*, 733 F. Supp. 2d 805, 820 (E.D. Mich. 2010) ("[F]raud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise."). But Michigan courts have carved out a bad-faith exception to this prohibition on promissory statements serving as a basis for fraud liability. The Court considers that exception

applicable here.

Under the bad-faith exception, a claim for "fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance." *Travis v. ADT Sec. Services, Inc.*, 884 F. Supp. 2d 629, 640 (E.D. Mich. 2012) (quoting *Hi-Way Motor Co.*, 247 N.W.2d at 816). Put another way, under Michigan law, a misrepresentation generally must be a statement of fact, not a future promise, to form the basis for fraud liability, "unless it is a future promise made in bad faith and without a present intention to perform." *Wilson v. Kiss*, 751 F. Supp. 1249, 1256 (E.D. Mich. 1990). The allegations of fraudulent misrepresentation in Plaintiffs' Second Amended Complaint that could be characterized as promissory in nature fit easily within this bad-faith exception because Plaintiffs plausibly allege that Delaney never had any intention of acting on his promises at the time he made them. For example, Plaintiffs assert that, on February 2, 2015, at Delaney's instruction, Dhadphale wired his $250,000 capital contribution to Elston. ECF No. 11 PageID.509. They further claim, "Delaney represented to Dhadphale that Elston would hold the funds in escrow until the operating agreement was executed, the LLC formed, and the LLC bank account was opened" and then deposit the funds into the LLC's account. *See id.* Even though Eshelman opened a bank account for the LLC sometime in March 2015, approximately one month after Dhadphale wired his contribution, only $50,000 of Dhadphale's contribution was

10

ever transferred to that account. ECF No. 11 PageID.510, 514. From these and other allegations the Court can reasonably infer that Delaney knew, at the time Delaney told Dhadphale his funds would be hold in escrow, that they would not be. Likewise, it is reasonable to infer from Plaintiffs' allegations about how Delaney "continued to highlight . . . his willingness to operate the business" in late 2014 and early 2015 and "intentionally le[d] [Plaintiffs] to believe that Delaney was fulfilling his duties as chief executive officer . . . and [that] the business was operational" even though the business actually "was never operational" that Delaney had no intention of fulfilling his promise to manage Encompass. ECF No. 11 PageID.507, 511; *see Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ("In reviewing the motion to dismiss, we . . . draw all reasonable inferences in favor of the plaintiff."). Accordingly, the Court finds that these and other alleged misrepresentations Delaney made about actions he would take in the future implicate Michigan's bad-faith exception and may therefore serve as the basis for Plaintiffs' fraud claim.

Delaney next contends that Plaintiffs' fraud claim should be dismissed under Rule 12(b)(6) because Plaintiffs fail to adequately allege that their reliance on his claimed misrepresentations was reasonable. Having examined the Second Amended Complaint, the Court finds that Plaintiffs allege several times that they "were justified and reasonable in relying" on Delaney's representations. Further, accepting the well-pled

11

factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs' reliance on Delaney's representations appears reasonable. Lastly, the integration clause in the operating agreement, which Delaney argues precludes reasonable reliance on his oral statements, in no way bars such a finding.

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). In evaluating a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not

"permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–679).

As described above, to state a claim for fraudulent misrepresentation under Michigan law, a plaintiff must have reasonably relied on the false representation. *Foreman v. Foreman*, 701 N.W.2d 167, 175 (Mich. Ct. App. 2005). The general rule is that "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Bushman v. Am. Title Co. of Washtenaw*, 101 F. Supp. 3d 714, 718 (E.D. Mich. 2015) (quoting *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 535 (Mich. Ct. App.)). The Michigan Court of Appeals has explained that this "rule is only applied when the plaintiffs were either presented with the information and chose to ignore it or had some other indication that further inquiry was needed." *Mercantile Bank of Mich. v. CLMIA, LLC*, No. 316777, 2015 WL 630259, *5 (Mich. Ct. App. Feb. 12, 2015) (quoting *Alfieri v. Bertorelli*, 813 N.W.2d 722, 776 (Mich. Ct. App. 2012)). Put another way, reliance on a false statement will generally be deemed unreasonable only "when the fraud victim has information on his own that establishes the falsity of the representation." *Arrowood Indem. Co. v. City of Warren*, No. 13-13938, 2015 WL 58679, *7 (E.D. Mich. Jan. 5, 2015) (citing *Montgomery Ward & Co. v. Williams*, 47 N.W.2d 607, 611 (Mich. 1951)).

To apply these rules, the Court first finds that Plaintiffs have expressly pled that their reliance on Delaney's alleged

13

misrepresentations was reasonable. They assert, twice, that they "were justified and reasonable in relying upon Delaney to accurately represent the administrative and financial state of the LLC." ECF No. 11 PageID.523, 528. Plaintiffs elsewhere allege facts that support an inference that they were reasonable in relying on Delaney's statements, for example, their allegation that, "Based on Delaney's representations about his experience and Runkel's representation about his willingness and ability to contribute [ ] $500,000 to the business venture, Dhadphale and Westfall agreed to go forward with forming an LLC." ECF No. 11 PageID.507. Based on the allegations in the Complaint, Plaintiffs knew of no information—at least not until years after the alleged fraudulent scheme began—that would reasonably have established that any of Delaney's representations were untrue. The Court thus finds that Plaintiffs have sufficiently alleged that their reliance on Delaney's statements was reasonable.

Delaney next contends that, because his alleged misrepresentations were made orally, outside Encompass's operating agreement, Plaintiffs' reliance on those misrepresentations could not be reasonable. Specifically, he refers to the operating agreement's integration clause, which states:

> This Operating Agreement supersedes all agreements previously made between the parties relating to its subject matter. There are no other understandings or agreements between them. It contains the entire agreement of the parties.

> It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

ECF No. 11-2 PageID.553. Based on the language, which expresses the primacy of the parties' written operating agreement, Delaney contends Plaintiffs could not have reasonably relied on any representations outside the written agreement, including any oral representations he made to them. *See* ECF No. 14 PageID.633–34 (Def.'s Mot. to Dismiss). Applying Michigan law on reasonable reliance, this argument must fail. First, Michigan courts "have not adopted a *per se* rule making reliance on prior statements unreasonable after a contract containing a merger clause is signed." *Diamond Comput. Sys., Inc. v. SBC Comm., Inc.*, 424 F. Supp. 2d 970, 985 (E.D. Mich. 2006). More fundamentally, a plaintiffs' reliance on an oral statement outside of a written contract between the parties is only deemed *de facto* unreasonable under Michigan law "if this oral representation is '*contradicted* by a written contract between the parties or otherwise conflict[s] with a written document that is readily available to the plaintiff.'" *Miller v. CVS Pharm., Inc.*, 779 F. Supp. 2d 683, 689 (E.D. Mich. 2011) (quoting *Chimko v. Shermeta*, No. 264845, 2006 WL 2060417, *3 (Mich. Ct. App. Jul. 25, 2006) (unpublished) (per curiam)). Here, Plaintiffs are not arguing that Delaney's alleged misrepresentations prior to execution of the operating agreement conflicted with the agreement or somehow altered its terms. To the

15

contrary, Plaintiffs assert that Delaney's oral misrepresentations induced them to sign the operating agreement in the first place. As explained by the Michigan Court of Appeals in *Jenson v. Gallagher*, "[t]here is an important distinction between (a) representations of fact made by one party to another to induce that party to enter into a contract, and (b) collateral agreements or understandings between two parties that are not expressed in a written contract." No. 312739, 2014 WL 667790, *2 (Mich. Ct. App. 2014) (per curiam). Critically, "[i]t is only the latter that are eviscerated by a merger clause." *Id.; see UAW-GM Human Res. Ctr. V. KSL Recreation Corp.*, 579 N.W.2d 411, 419 (Mich. Ct. App. 1998) (explaining that even where a contract contains a valid merger clause, fraud relating to the merger clause or fraud that invalidates the entire contract could vitiate the merger clause or the contract). Plaintiffs in the instant case are arguing that Delaney's representations enticed them to enter into the operating agreement, not that those representations formed any competing contract not reflected in, or contradicted by, the operating agreement. Delaney's argument that the integration clause forecloses any assertion by Plaintiffs that they reasonably relied on his oral statements is therefore without merit.

## CONCLUSION

For these reasons, Defendant Joseph Delaney's Motion to Dismiss Plaintiffs' Claim for Fraud is **DENIED**.

Dated: August 23, 2019       s/Terrence G. Berg
                                                TERRENCE G. BERG
                                                UNITED STATES DISTRICT JUDGE