UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ANIKET DHADPHALE**, and **FBO CHRISTOPHER WESTFALL IRA**,<br><br>Plaintiffs,<br><br>v.<br><br>**JOSEPH DELANEY**, **BRETT J. RUNKEL**, and **D. SCOTT ESHELMAN**,<br><br>Defendants. | 2:18-CV-13780-TGB-APP<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING DEFAULT JUDGMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR FEES AND COST (ECF NO. 71)** |

This is a breach of contract and conspiracy case, where Plaintiffs seek damages for losses incurred as a result of Defendants' allegedly fraudulent business scheme. While the original complaint named three Defendants, Plaintiff have entered into settlement with two Defendants who were then voluntarily dismissed with prejudice by Plaintiffs.

This matter is now before the Court on Plaintiffs' Motion for Entry of Default Judgment against remaining Defendant Brett Runkel. ECF No. 71. In addition to default judgment, Plaintiffs seek damages totaling $300,000. ECF No. 78, PageID.1932. Plaintiffs' counsel also request $126,873.73 in attorney fees and $8,017.80 in costs. *Id.* at PageID.1935.

This Court held a hearing on Plaintiffs' Motion for Default Judgment on October 16, 2020. Plaintiffs submitted supplemental

1

materials the Court requested on October 23, 2020. ECF No. 78. Having reviewed the pleadings and other records submitted in support of the motion; and carefully considered the arguments made by Plaintiffs at the hearing; and this Court being fully satisfied that Plaintiffs' attempts to serve Defendant Runkel with copies of the Complaint and other case-initiating documents; and good cause being shown; the Court hereby **GRANTS** Plaintiffs' Motion for Default Judgment against Defendant Runkel. The Court will also order that Defendant Runkel pay $300,000 in damages, as well as reasonable attorney's fees and costs as outlined in this Order.

### I. DAMAGES

Plaintiffs seek an award of $300,000 in damages to be assessed against Defendant Runkel. Federal Rule of Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the Complaint, including jurisdictional averments." *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. and Guar.*, 661 F.2d 119, 124 (6th Cir.1981)). *See also Stooksbury v. Ross*, 528 F. App'x 547, 551 (6th Cir. 2013).

However, while the well-pleaded factual allegations in the complaint are considered admitted when a defendant is in default, the damages are not. *Ford Motor Co.*, 441 F.Supp.2d at 848. The Court has discretion, but "[o]rdinarily the District Court must hold an evidentiary proceeding in which the defendant has the opportunity to contest the amount [of damages]." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). The Court must conduct an inquiry to ascertain the amount of damages "with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999)). "[W]hile the damages may not be determined by mere speculation or guess, it will be enough if the evidence show [sic] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." *Willie McCormick and Associates, Inc. v. Lakeshore Eng'g Services, Inc.*, 2018 WL 1884716, *(E.D. Mich. Mar. 29, 2018) (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)). Finally, under Federal Rule of Civil Procedure 54, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. Pro. 54(c).

Here, Plaintiffs seek a total of $300,000 in damages from Defendant Runkel. In the original complaint, Plaintiffs claim that they each made a capital contribution of $250,000 for a total of $500,000 in capital contributions to Defendants' venture. ECF No. 11, PageId.509-10. Through settlement agreements, Plaintiffs received $230,000 from Defendant Delaney, $5,000 from a third party, and $165,000 from Defendant Eshelman. ECF No. 71-2; ECF No. 79. According to Plaintiffs' motion, their recovery is limited by the principle of "one injury, single recovery," and therefore the damages award should be offset by the $400,000 Plaintiffs have recovered to date through settlement. As such, Plaintiffs seek $100,000 in remaining damages from Defendant Runkel, which they ask the Court to treble pursuant to Michigan's statutory conversion statute for a total of $300,000 in damages. ECF No. 78, PageID.1932.

At the outset, it is clear that at a minimum Plaintiffs are entitled to $100,000 in damages from Defendant Runkel. Pursuant to *Ford Motor Co.*, the Court takes the well-pled allegations in the complaint as true. 441 F.Supp.2d at 848. Plaintiffs' damages in this case total $500,000, which is the combined amount of their capital contributions to the business. These funds were never returned to Plaintiffs despite multiple demands. Therefore, after subtracting the $400,000 already recovered in settlement, $100,000 in damages remain.

The more complex question is whether Plaintiffs are entitled to treble damages, which would increase the total damages to $300,000. In Count IV of the complaint, Plaintiffs allege Defendants committed statutory conversion when they utilized Plaintiffs' capital contributions for their own purposes rather than for the business. ECF No. 11, PageID.520. There are two forms of statutory conversion in Michigan:

> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

MCL § 600.2919a. The Michigan statute also explicitly authorizes treble damages, stating "[a] person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees[.]" *Id.*

However, a claim for conversion of money is available only in narrow circumstances. *Kerrigan v. ViSalus, Inc.*, 112 F.Supp.3d 580, 615 (E.D. Mich. 2015). Under MCL § 600.2919a, a plaintiff may sue "for the conversion of funds that were delivered to the defendant for a specified purpose, but that the defendant diverted to his or her own use." *Keyes v. Deutsche Bank Nat'l Tr. Co.*, 921 F.Supp.2d 749, 761 (E.D. Mich. 2013) (quoting *Tooling Mfg. & Technologies Ass'n v. Tyler*, No. 293987, 2010

5

WL 5383529, at *11 (Mich. Ct. App. Dec. 28, 2010) (citing *Hogue v. Wells*, 146 N.W. 369 (Mich. 1914)). It is insufficient to merely show that a defendant failed to return property belonging to the plaintiff; rather, to prevail on a statutory conversion claim, a plaintiff must demonstrate "that the inventory was stolen, embezzled, or converted to Defendant's own use." *Graham Med. Technologies, LLC v. Akron Med., Inc.*, 2011 WL 1899230, at *7 (E.D. Mich. May 19, 2011).

Plaintiffs allege that Defendant Runkel converted "at least $138,700 for his own use," which they note, is "well over the principle amount requested by Plaintiffs here." ECF No. 78, PageID.1932. As set out in the Complaint, Plaintiffs Dhadphale and Westfall contributed $500,000 to Defendants' proposed pharmaceutical return business. ECF No. 11, PageID.509-10. According to Plaintiffs, not only did Defendants fail to return the money intended for investment in the business, but Defendant Runkel wrongfully utilized these funds for his own use. ECF No. 78, PageID.1932. In supplemental briefing, Plaintiffs provide bank statements and receipts of wire funds to support their claims:

> First, Runkle instructed Douglas Elston to disburse $7,150 (cash) of Mr. Dhadphale's $250,000 capital contribution to Runkel in February 2015. . . . Second, in April 2015, Mr. Runkel diverted $131,550 of Plaintiffs' funds into an escrow account for a purchase of a group of restaurants[.] This was done in three wire transfers: $39,450 on April 3, 2015, $52,650 on April 10, 2015, and $39,450 on April 14, 2015.

ECF No. 78, PageID.1930.

6

Based on the materials presented during the evidentiary hearing and the information provided in the supplemental filings, the Court finds Plaintiffs are entitled to treble damages. First, Plaintiffs have provided evidence that Defendants took Plaintiffs' capital contributions, intended for a pharmaceutical return business venture, and failed to return the funds when the company became non-operational. Next, and critically, Plaintiffs provide evidence that Defendant Runkel moved $131,550 of their capital contributions, without Plaintiffs' approval, into an escrow account. ECF No. 78, PageID.1930. Finally, Plaintiffs' have presented proof in the form of bank statements, wire transfers, and a case filed in California, for their contention that Defendant Runkel utilized Plaintiffs' capital contributions in another scheme to fraudulently induce a restauranteur to sell him a group of restaurants. ECF No. 78, PageID.1931. *See* ECF No. 78-3. *Cf. Olympic Forest Products, Ltd. v. Cooper*, 148 F. App'x 260, 265 (6th Cir. 2005) (holding that allegations that a party retained money and failed to return it were insufficient to support a statutory conversion claim). In sum, Plaintiffs have adequately shown that their capital contributions were not only taken and not returned, but also utilized by Defendant Runkel in an unrelated transaction for his own purposes. Thus, Plaintiffs have demonstrated that they adequately pled a statutory conversion claim against Defendant Runkel and are entitled to treble damages.

Accordingly, the Court will award a total of $300,000 in damages to Plaintiffs.

## II. ATTORNEYS FEES AND COSTS

Counsel for Plaintiffs, from the firm of Schiff Hardin LLP, also request attorney's fees and costs for the litigation. For the reasons discussed below, the Court will approve $72,900 in attorney's fees and $6,304 in costs.

Michigan's statutory conversion law provides for the recovery of reasonable attorney's fees and costs incurred by the prevailing plaintiff. M.C.L. § 600.2919a(1) ("A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, *plus costs and reasonable attorney fees*[.]") (emphasis added). *See also Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F.Supp.3d 874, 892 (E.D. Mich. 2015).

To determine a reasonable attorney fee award, the Court must first determine the "lodestar" by multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)). The party requesting the fees has the burden of establishing that the hourly rate they seek is reasonable and must provide evidence of the hours worked and rates sought. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013). "The key requirement for an award of attorney's fees is that the

8

documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008).

To determine a reasonable hourly rate, courts generally look to the "prevailing market rate in the relevant community" for lawyers of similar skill and experience for the type of work at issue in the case. *Yellowbook*, 708 F.3d at 850. *See also Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016). District courts have relied on the State Bar of Michigan Economics of Law Practice survey to determine average billing rates in Michigan—a practice the Sixth Circuit has approved. *See Hemlock Semiconductor Operations, LLC v. SolarWorld Industries Sachsen GmbH*, 702 F. App'x 408, 411 (6th Cir. 2017). The Court may then reduce or increase the hourly rate based on case-specific factors including:

> (1) the professional standing and experience of the attorney;
> (2) the skill, time and labor involved;
> (3) the amount in question and the results achieved;
> (4) the difficulty of the case;
> (5) the expenses incurred; and
> (6) the nature and length of the professional relationship with the client.

*Wood v. Detroit Auto. Inter-Insurance Exch.*, 321 N.W.2d 653, 661 (Mich. 1982) (quoting *Crawley v. Schick*, 211 N.W.2d 217, 222 (Mich. 1973). *See*

*also Hensley*, 461 U.S. 433-37. However, a court is not limited to the above factors and "need not detail its findings as to each specific factor considered." *Id*.

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, trial courts "may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Id*. "[T]here is no requirement . . . that district courts identify and justify each disallowed hour." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986) (citing *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). "Nor is there any requirement that district courts announce what hours are permitted for each legal task." *Ibid*. Instead, the Supreme Court has held that district courts should provide a "a concise but clear explanation" of its reasons for a fee award. *Hensley*, 461 U.S. at 437.

   a.   **Hourly Rate**

The Court first turns to Counsel's requested hourly rate. The time and fee summary submitted by Counsel includes billing from six timekeepers whose hourly rates range from $255.16 an hour to $740.00 an hour. ECF No. 72-1, PageID.1804. At the outset, the Court notes that while Plaintiffs' counsel seeks to recover attorney's fees from these six different timekeepers, the Court will only consider the hours and rates associated with Attorney Elise Yu. Plaintiffs' motion for attorney's fees

only addresses the experience and involvement of Ms. Yu. There is no discussion of the background, professional standing, experience, billing rate, or involvement for any of the other five individuals whose hours and fees are included in the total amount requested from Plaintiffs' counsel. *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020); *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). This is particularly concerning because the hourly rate listed for three of the timekeepers is significantly higher than averages in the state. *See* State Bar of Michigan 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report, https://perma.cc/G226-BKBG. In the absence of any explanation, such as the number of years these individuals have been in practice, Plaintiffs' counsel has failed to meet their evidentiary burden and the Court is unable to properly assess whether the requested fees are reasonable. Therefore, the Court will only consider the fees and hours of Ms. Yu.

Attorney Yu contends that her hourly rate of $433 is reasonable because, as an attorney with five years of experience, she litigated against a veteran attorney, obtained an "excellent result for Plaintiffs,"

11

has rates consistent with attorneys of "comparable professional standing from comparable firms," and has "significant, substantive experience litigating commercial disputes" in both Illinois and Michigan. ECF No. 78, PageID.1934. Having reviewed Plaintiffs' counsel's motion and the average billing rates in Michigan, the Court finds that an hourly rate of $324 is more appropriate.

To determine what billing rates are required, the relevant inquiry is "what rates are required 'to encourage competent lawyers within the relevant community to undertake legal representation.'" *Linneman,* 970 F.3d at 630 (quoting *Hadix v. Johnson*, 65 F.3d 532, 563 (6th Cir. 1995)). A reasonable rate "is not necessarily the exact value sought by a particular firm[.]" *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007). In fact, the Sixth Circuit has determined that "lawyers are entitled only to 'reasonable' fees and that 'such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.'" *Linneman,* 970 F.3d at 630 (quoting *Ne. Ohio Coal. for the Homeless*, 831 F.3d at 716). The lawyer seeking fees bears the burden of submitting evidence to show that the requested rate is reasonable. *Id*.

As previously discussed, district courts have relied on the State Bar of Michigan Economics of Law Practice survey to determine average billing rates in Michigan. *See Hemlock Semiconductor Operations, LLC*, 702 F. App'x at 411. The 2020 edition of this survey lists a "mean" hourly

12

rate of $324 and a 75th percentile rate of $375 for the practice area of "civil litigation." State Bar of Michigan 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report, https://perma.cc/G226-BKBG. The survey also reports a "mean" hourly rate of $242 and a 75th percentile rate of $275 for attorneys who have been in practice for three to five years. *Id.* While Ms. Yu requests a significantly higher rate than both the mean for this area of practice and her years in practice, Plaintiffs' counsel did not submit an affidavit in support of Ms. Yu's fees and the motion itself only offers a cursory explanation of why they are entitled to a higher hourly rate than the state averages.

Based on the foregoing, the Court finds that an hourly rate of $324 is reasonable in this instance given counsel's level of experience, the mean rates for civil litigation in the area, and the minimal evidence submitted to support a higher rate.

    **b.    Hours Expended by Plaintiffs' Counsel**

The Court next considers the number of hours expended by Plaintiffs' counsel in this matter. Schiff Harden has requested fees for

13

320 attorney hours.[1] ECF No. 79, PageID.1934. Having reviewed the billing records, the Court finds that 225 hours is an appropriate award.

A reduction from Plaintiffs' counsel's requested hours is warranted for several reasons. First, as stated above, the Court will only consider the hours of Ms. Yu because Plaintiffs' counsel has not provided any information about the legal expertise, experience, or standing of any of the other submitted timekeepers, which makes the Court's evaluation of the hours and rates impossible. In total, the records show Ms. Yu billed 220.89 hours for work completed through August 2020 and 24.5 total hours for the preparation and filing of Plaintiff's Motion for Entry of Default Judgment, the hearing on the same, and the supplemental brief requested by this Court. ECF No. 72. Next, reduction is warranted as several entries on Plaintiffs' billing statement relate to settlement with other Defendants. While the claims against all Defendants overlap substantially, the Court finds it is not reasonable to require Defendant Runkel to bear costs related to settlement with other Defendants when these tasks were neither necessary nor useful to establishing Defendant Runkel's wrongdoing. *See Carroll v. Blinken*, 105 F.3d 79, 82 (2d Cir. 1997) ("The allocation of the fee liability between the defendants is, however, a matter committed to the district court's discretion."); *Grand*

---

[1] While Plaintiffs' counsel states in the motion that they request fees for approximately 320 hours, the time and fee summary and billing statements appear to only account for 300 hours.

*Traverse Band of Ottawa and Chippewa Indians v. Director, Mich. Dept. of Natural Res.*, 1998 WL 385891, at *6 (6th Cir. 1998).

Even if the Court considered the total amount of hours requested by Plaintiffs' counsel, reduction would have been warranted as several entries are vague and therefore prevent the Court from evaluating the reasonableness of such hours. *See Torres–Rivera v. O'Neill–Cancel*, 524 F.3d 331, 336 (1st Cir.2008) ("[T]ime records may be too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like. In that event, the court may either discount or disallow those hours.").

Based on that review the Court concludes that 225 attorney hours over the course of almost 23 months—an average of nearly 10 hours per month—is a reasonable number of hours for counsel to have expended.

Having concluded that the appropriate number of attorney's hours is 225 hours and the appropriate hourly fee is $324, the total lodestar amount is $72,900. Plaintiffs' counsel has not submitted any evidence that the lodestar fee should be enhanced. Therefore, Plaintiffs' counsel is entitled to recover $72,900 in attorney's fees.

c. **Costs**

Schiff Hardin has also requested $8,017.80 in costs arising from this litigation. In general the costs requested are for research services, delivery and mailing, vendors for discovery and depositions, transcript

15

fees, and court reporter charges. ECF No. 72-1. As discussed above, the Court will deduct costs related to settlement and mediation. Therefore, the Court finds that $6,304 in costs is reasonable given the length and complexity of this litigation. Accordingly, the Court will award Schiff Hardin $6,304 in costs.

## CONCLUSION

It is hereby **ORDERED** that Plaintiffs' Motion for Default Judgment as to Brett J. Runkel (ECF No. 71) is **GRANTED.** Accordingly, the Court will enter judgment in the amount of $300,000 in favor of Plaintiffs.

It is further **ORDERED** that Plaintiff is entitled to recover $72,900 in attorney's fees and $6,304 in costs, awarded jointly to Plaintiffs and their attorney. The judgment will so order.

It is further **ORDERED** that Plaintiff shall cause a copy of this order and ensuing judgment to be served personally on Defendant immediately.

**SO ORDERED**.

Dated: November 12, 2020       s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE

16